UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| KIMBERLY H.,[1]<br><br>           Petitioner,<br><br>v.<br><br>KILOLO KIJAKAZI, Acting<br>Commissioner of Social Security,<br><br>           Respondent. | Case No. 1:21-CV-00114-CWD<br><br>**MEMORANDUM DECISION AND ORDER** |

**INTRODUCTION**

Petitioner brought this matter for judicial review of Respondent's denial of her application for disability insurance benefits and supplemental security income. (Dkt. 1.) The Court has reviewed the Petition for Review, the parties' memoranda, and the administrative record (AR). For the reasons set forth below, the Court will reverse and remand the decision of the Commissioner for further proceedings.

---

[1] Partially redacted in compliance with Federal Rule of Civil Procedure 5.2(c)(2)(B) and the recommendation of the Committee on Court Administration and Case Management of the Judicial Conference of the United States.

**MEMORANDUM DECISION AND ORDER - 1**

## BACKGROUND

On June 15, 2018, Petitioner protectively filed an application for disability insurance benefits and supplemental security income under Titles II and XVI of the Social Security Act. (AR 15.) She alleged a disability onset date of July 12, 2017, due to physical and mental impairments including arthritis, chronic pain, insulin dependent diabetes, sleep apnea, depression, gastrointestinal ulcers, obesity, migraines, and diabetic neuropathy. (AR 73-90.) Petitioner's application was denied upon initial review and on reconsideration. (AR 15.) A hearing was held before Administrative Law Judge (ALJ) Christopher Inama on June 26, 2020, at which the ALJ considered testimony from Petitioner and a vocational expert. (AR 15-27, 33-72.) At the hearing, Petitioner amended her alleged onset date to February 28, 2018. (AR 43.)

On June 26, 2020, the ALJ issued a written decision finding Petitioner was not under a disability from February 28, 2018, through the date of the decision, and therefore found Petitioner is not disabled. (AR 15-27.) In the decision, the ALJ found Petitioner suffers from the severe impairments of osteoarthritis and allied disorder, morbid obesity, and left shoulder tendonitis. (AR 18.) Relatedly, the ALJ found Petitioner's migraine headaches, fibromyalgia, atrial flutter, spine disorder, diabetes mellitus type 2 with polyneuropathy, and obstructive sleep apnea conditions non-severe. (AR 18.)

The ALJ found that Petitioner retained the residual functional capacity ("RFC") to perform sedentary work as defined in 20 C.F.R. § 404.1567(a) and 416.967(a)[2] except that Petitioner could:

> occasionally climb ramps and stairs; never climb ladders, ropes, or scaffolds; and occasionally balance, stoop, kneel, crouch, and crawl. She can occasionally reach overhead with her left upper extremity and has no other manipulative limitations. She should avoid concentrated exposure to extreme cold and to vibration. She should avoid all exposure to hazards (e.g., unprotected heights and dangerous machinery).

(AR 21.) The ALJ concluded at step four[3] that Petitioner could perform her past work as a medical records clerk and court clerk. (AR 25.) The ALJ also made alternative findings at step five, concluding Petitioner retained the RFC to perform other jobs that exist in significant numbers in the national economy, such as data entry clerk, hospital admitting clerk, and information clerk. (AR 27.)

Petitioner timely requested review by the Appeals Council, which denied her request on January 12, 2021. (AR 1 – 6.) Petitioner timely appealed this final decision to

---

[2] Sedentary work requires the ability to lift no more than 10 pounds at a time, with periods of standing or walking totaling no more than 2 hours of an 8-hour workday and sitting for a total of approximately 6 hours of an 8-hour workday. SSR 83-10.

[3] For a summary of the process, *see Kennedy v. Colvin*, 738 F.3d 1172, 1175 (9th Cir. 2013) ("The five-step process for disability determinations begins, at the first and second steps, by asking whether a claimant is engaged in 'substantial gainful activity' and considering the severity of the claimant's impairments. *See* 20 C.F.R. § 416.920(a)(4)(i)-(ii). If the inquiry continues beyond the second step, the third step asks whether the claimant's impairment or combination of impairments meets or equals a listing under 20 C.F.R. pt. 404, subpt. P, app. 1 and meets the duration requirement. *See id.* § 416.920(a)(4)(iii). If so, the claimant is considered disabled and benefits are awarded, ending the inquiry. *See id.* If the process continues beyond the third step, the fourth and fifth steps consider the claimant's 'residual functional capacity' in determining whether the claimant can still do past relevant work or make an adjustment to other work. *See id.* § 416.920(a)(4)(iv)-(v).").

the Court on March 11, 2021. (Dkt. 1.) The Court has jurisdiction to review the ALJ's

decision pursuant to 42 U.S.C. § 405(g).

At the time of her alleged disability onset date of February 28, 2018, Petitioner

was fifty-two years of age, and she attained fifty-four years of age by the time the ALJ

issued his written determination on June 26, 2020. (AR 26.) Petitioner completed high

school, and she reported past work as a medical records clerk and a court clerk. (AR 26.)

Since January 24, 2018, Petitioner has been self-employed as a children's counselor

working between 2 and 6 hours each week and earning $18.00 per hour. (AR 18.)

## ISSUES FOR REVIEW

1.    Whether the ALJ reasonably evaluated Petitioner's subjective symptom testimony
      concerning her physical impairments?

2.    Whether the ALJ's disregard of the lay witness statements constitutes harmless
      error?

3.    Whether the ALJ reasonably evaluated the medical opinion evidence?

## STANDARD OF REVIEW

The Court will uphold an ALJ's decision, unless: (1) the decision is based on legal

error, or (2) the decision is not supported by substantial evidence. *Revels v. Berryhill*, 874

F.3d 648, 654 (9th Cir. 2017). Substantial evidence is "'such relevant evidence as a

reasonable mind might accept as adequate to support a conclusion.'" *Biestek v. Berryhill*,

139 S. Ct. 1148, 1154 (2019) (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197,

229 (1938)). This requires "more than a mere scintilla" of evidence. *Id.*

**MEMORANDUM DECISION AND ORDER  - 4**

The Court must consider the administrative record as a whole. *Garrison v. Colvin*, 759 F.3d 995, 1009 (9th Cir. 2014). It must weigh both the evidence that supports, and the evidence that does not support, the ALJ's conclusion. *Id.*

If the ALJ's decision is based on a rational interpretation of conflicting evidence, the Court will uphold the ALJ's finding. *Carmickle v. Comm'r of Soc. Sec. Admin.*, 533 F.3d 1155, 1165 (9th Cir. 2008). It is unnecessary for the ALJ to "discuss all evidence presented." *Vincent on Behalf of Vincent v. Heckler*, 739 F.2d 1393, 1394-95 (9th Cir. 1984) (citation omitted) (emphasis in original). The ALJ must, however, explain why "significant probative evidence has been rejected." *Id.*

Petitioner's assignments of error challenge the ALJ's step four and five findings regarding Petitioner's residual functional capacity ("RFC"). The Court finds Petitioner's arguments persuasive, as explained below.

## DISCUSSION

At step four of the sequential evaluation, the ALJ is required to make factual findings regarding: (1) the claimant's RFC, (2) the physical and mental demands of the claimant's former employment, and (3) whether the claimant's RFC permits her to return to previous occupations. Social Security Ruling (SSR) 82–62, 1982 WL 31386 (1982).

A claimant's RFC is "the most [the claimant] can still do despite [his or her] limitations." 20 C.F.R. § 404.1545(a). The assessment of a claimant's RFC must be "based on all the relevant evidence in [the claimant's] case record." *Id. See also Mayes v. Massanari*, 276 F.3d 453, 460 (9th Cir. 2001). When a claimant requests an administrative hearing, it is the duty of the ALJ to determine the claimant's RFC from the

record. 20 C.F.R. § 404.1546(c). "It is clear that it is the responsibility of the ALJ, not the claimant's physician, to determine residual functional capacity," and the ALJ's findings of RFC need not correspond precisely to any physician's findings. *Vertigan v. Halter*, 260 F.3d 1044, 1049 (9th Cir.2001). It is the claimant who bears the burden of proof of establishing his or her RFC. *Bowen v. Yuckert*, 482 U.S. 137, 146 n. 5 (1987).

Here, Petitioner contends there is insufficient evidence to support the ALJ'S finding that she can sustain full time sedentary work as defined in 20 C.F.R. § 404.1567(b) and SSR 83–10 without significant interruption from pain. The vocational expert testified that, if an individual with Petitioner's age, education, and the ALJ's RFC were further limited and required an accommodation to allow sitting for thirty minutes and standing for thirty minutes to adjust position, such an individual would not be able to perform Petitioner's past relevant work. (AR 70.) The vocational expert testified also that, if the individual were absent two or more days each month, all competitive employment would be eliminated. (AR 69.) And last, the vocational expert testified that an individual who would spend greater than ten percent of each day off task or who required more than regular scheduled breaks, would not be employable. (AR 69.)

1.     **Subjective Symptom Testimony**

The ALJ considered Petitioner's subjective symptom testimony concerning her physical impairments, finding her testimony did not substantiate her allegations of disabling limitations. The ALJ concluded that, although Petitioner's medically determinable impairments could reasonably be expected to cause her alleged symptoms, her statements concerning the intensity, persistence, and limiting effects of these

symptoms were not entirely consistent with the medical and other evidence in the record. (AR 22.) The ALJ cited the following reasons in support of his determination: (1) objective findings revealing normal strength, normal gait, normal balance, and mild degenerative disease process; (2) regular physical activities such as walking, swimming, spending time with her granddaughter, and interacting with friends; and (3) Petitioner's ability to use a computer and work part-time doing desk work. (AR 25.) Nonetheless, the ALJ credited Petitioner's consistent pain complaints, which he concluded suggested a chronic disease process. (AR 25.) The ALJ also found that, although Petitioner did not satisfy the requirements of SSR 12-2p[4] to establish fibromyalgia, he noted that, in November 2018, Petitioner's treatment provider charted that Petitioner's joint pain was likely due to fibromyalgia and depression, with probable primary osteoarthritis of multiple joints contributing. (AR 19, 24.)

Petitioner argues the ALJ's conclusion is not supported by substantial evidence in the record and is therefore erroneous. She argues that the ALJ did not provide an adequate explanation, nor explain how her activities met the threshold for transferrable work skills. Pet. Brief at 8. (Dkt 17.) Respondent contends the ALJ reasonably addressed Petitioner's subjective complaints, and that there is sufficient evidence to support the ALJ's adverse findings regarding Petitioner's subjective symptom testimony. Respondent asserts that the ALJ's findings regarding the intensity and limiting effects of Petitioner's

---

[4] SSR 12-2p provides guidance on how the SSA develops evidence to establish that a person has a medically determinable impairment of fibromyalgia, and how fibromyalgia is to be evaluated in disability claims.

**MEMORANDUM DECISION AND ORDER  - 7**

pain are supported by the following evidence cited by the ALJ: (1) Petitioner did not stop

working because of a disability, and she currently works part time in an office setting; (2)

Petitioner's daily activities, which include walking and aerobic exercise, undermine her

symptom testimony; and (3) the objective medical evidence is inconsistent with

Petitioner's stated limitations. Resp.'s Brief at 4-6. (Dkt. 18.)

### A.      Legal Standard

The ALJ engages in a two-step process for evaluating a claimant's testimony

about the severity and limiting effect of the claimant's symptoms. *Trevizo v. Berryhill*,

871 F.3d 664, 678 (9th Cir. 2017). First, the ALJ must determine whether the claimant

has presented objective medical evidence of an underlying impairment which could

reasonably be expected to produce the pain or other symptoms alleged. *Trevizo v.*

*Berryhill*, 871 F.3d 664, 678 (9th Cir. 2017) (quoting *Garrison v. Colvin*, 759 F.3d 995,

1014-15 (9th Cir. 2014); 20 C.F.R. § 404.1529 (Mar. 27, 2017)). The claimant does not

need to show "that her impairment could reasonably be expected to cause the severity of

the symptom she has alleged; she need only show that it could reasonably have caused

some degree of the symptom." *Smolen v. Chater*, 80 F.3d 1273, 1282 (9th Cir. 1996).

If the claimant satisfies the first step of this analysis, and there is no evidence of

malingering, the ALJ may reject the claimant's testimony about the severity of her

symptoms only by offering specific, clear and convincing reasons[5] for doing so. *Trevizo v. Berryhill*, 871 F.3d 664, 678 (9th Cir. 2017); *Berry v. Astrue*, 622 F.3d 1228, 1234 (9th Cir. 2010). It is "not sufficient for the ALJ to make only general findings; he [or she] must state which pain testimony is not credible and what evidence suggests the complaints are not credible." *Dodrill v. Shalala*, 12 F.3d 915, 918 (9th Cir. 1993). These reasons must be "sufficiently specific to permit the reviewing court to conclude that the ALJ did not arbitrarily discredit the claimant's testimony." *Orteza v. Shalala*, 50 F.3d 748, 750 (9th Cir. 1995) (citing *Bunnell v. Sullivan*, 947 F.2d 345, at 345-46 (9th Cir. 1991)).

When evaluating the intensity and persistence of symptoms, the ALJ must consider all the evidence in the record. *See* SSR 16-3p (March 16, 2016), 2016 WL 1119029 at *1-2.[6] The ALJ is directed to examine "the entire case record, including the objective medical evidence; an individual's statements about the intensity, persistence, and limiting effects of symptoms; statements and other information provided by medical

---

[5] Respondent claims that the clear and convincing standard conflicts with the Social Security Act and its implementing regulations. Resp.'s Brief at 4 n.1. (Dkt. 18.) However, the United States Court of Appeals for the Ninth Circuit explained in *Lambert v. Saul*, 980 F.3d 1266 (9th Cir. 2020), that an ALJ must offer clear and convincing reasons, not mere "non-specific conclusions," and identify "which testimony [the ALJ] found not credible, and [explain] which evidence contradicted that testimony." *Id.* at 1277 (quoting *Brown-Hunter v. Colvin*, 806 F.3d 487, 494 (9th Cir. 2015)). This is so the Court can meaningfully review the ALJ's decision. *Id.* In turn, the reasons for rejecting a claimant's testimony about her symptoms must be supported by "substantial evidence in the record as a whole." 42 U.S.C. § 405(g). In other words, the Court should be able to review the portions of the record cited in support of the ALJ's reasons and determine whether the evidence is sufficient to support them.

[6] The Commissioner superseded SSR 96-7p governing the assessment of a claimant's "credibility" with SSR 16-3p, which eliminates the reference to "credibility," clarifies that "subjective symptom evaluation is not an examination of an individual's character," and requires the ALJ to evaluate the record as a whole. *Trevizo v. Berryhill*, 871 F.3d 664, 679 n.5 (9th Cir. 2017).

**MEMORANDUM DECISION AND ORDER - 9**

sources and other persons; and any other relevant evidence in the individual's case record." *Id*. at *4.

The Commissioner recommends assessing: (1) the claimant's statements made to the Commissioner, medical providers, and others regarding the location, frequency and duration of symptoms, the impact of the symptoms on daily living activities, factors that precipitate and aggravate symptoms, medications and treatments used, and other methods used to alleviate symptoms; (2) medical source opinions, statements, and medical reports regarding the claimant's history, treatment, responses to treatment, prior work record, efforts to work, daily activities, and other information concerning the intensity, persistence, and limiting effects of an individual's symptoms; and (3) non-medical source statements, considering how consistent those statements are with the claimant's statements about his or her symptoms and other evidence in the file. *See id*. at *6-7.

### B.   Petitioner's Subjective Complaints

Petitioner completed a function report on July 29, 2018. (AR 353.) She described being in chronic pain which limited her daily activities such as cleaning, yard work, driving, or attending functions. Her activities were interrupted by rest due to pain. (AR 354.) She indicated also that she requires a stool in the kitchen to prepare meals, which are simple to prepare; she has help with household chores; it takes her most of the day to do laundry; and that her son helps her with dishes, cooking, vacuuming, sweeping, mopping, and cleaning. (AR 355.) When she grocery shops once each month, she asks for help loading the bags into her car and utilizes a motorized cart. (AR 356.) She stated also that she does not go walking like she used to due to pain, and that she has difficulty

holding a pen to write. (AR 357.) She estimated that she could not lift more than ten pounds; she could stand for ten minutes before needing a break; she could walk up to 15 feet before needing a break; she could not squat, bend, reach, kneel, or climb stairs; and her hands hurt, which limits her writing. (AR 358.) She indicated she needed assistance to complete the function report due to pain in her hands, and that she received an extension to complete the questionnaire due to pain. (AR 360.)

Petitioner completed a second function report on February 17, 2019, recounting again that chronic pain prevents her from sitting at a desk typing, using office equipment and computers, and walking. (AR 385.) At that time, Petitioner was living with her sister. Petitioner stated she could not do housework without multiple breaks due to pain, and that her sister helped her with dressing, bathing, and caring for her hair. (AR 386.) She used a stool in the kitchen to prepare meals like sandwiches. (AR 387.) Her sister helped her shop for groceries once each month. (AR 388.) Petitioner indicated also that her ability to watch television and gather with friends and family was decreased due to pain, and that she was limited to talking on the telephone with friends and family. (AR 389.) Her estimate of her functional abilities had decreased. Petitioner estimated she could lift no more than five pounds; stand no more than two minutes; walk up to 15 feet; sit for 15 minutes at a time; and that she could not squat, bend, reach, lift, or kneel without pain. (AR 390.)

At the hearing, Petitioner testified she was provided an accommodation when she worked as a medical records clerk. (AR 47.) An assistant helped her by walking around the facility to retrieve and lift files and other paperwork due to Petitioner's pain, which

MEMORANDUM DECISION AND ORDER - 11

prevented her from doing those aspects of her job. (AR 47.) Petitioner testified also that she would take days off due to pain and stay home sick. (AR 50.) Although she left that job because the business closed, Petitioner did not think she could have continued in that job due to pain. (AR 50.) She sought another job thereafter as a court clerk but was fired because she was having trouble remembering what she was supposed to do. (AR 51.)

She testified at the hearing that most of her pain occurs when she is walking, and that she uses a cane. (AR 51.) She described her pain as radiating from her lower back to her shoulders, "like an electrical spark." (AR 51.) To address her pain, she is prescribed Lyrica, but because it makes her drowsy, she takes it only at night and takes Tylenol during the day. (AR 52.) She explained that she does not take other medications, such as narcotics, because of the side effects. (AR 53.) Petitioner testified that she currently has assistance from a home health aide, who comes to her house three hours each day four days per week to assist with household chores and personal care. (AR 53.)

### C.   Analysis

#### 1.   *Petitioner's Prior and Current Work Activities*

The ALJ found Petitioner's statements about the intensity and limiting effects of her pain were undermined because she did not stop working as a medical records clerk due to her physical condition, and she was currently working part time doing desk work using a computer, suggesting she could sit at a desk and type, and use her arms and shoulders. (AR 24, 25.)

When put in context and in light of the record as a whole, the ALJ's reasons for discrediting Petitioner's testimony about the intensity and limiting effects of her pain are

**MEMORANDUM DECISION AND ORDER - 12**

not supported by substantial evidence. Regarding Petitioner's past work, the ALJ failed to acknowledge the accommodations Petitioner received while working as a medical records clerk. She required an assistant to carry out the walking and lifting demands of a sedentary job. She often missed work due to excessive pain. And, Petitioner testified that she likely could not have continued working for her prior employer due to her physical limitations.

As for Petitioner's part-time work as a case manager, the ALJ failed to explain how work as a self-employed children's counselor working between 2 and 6 hours each week satisfies the requirement to evaluate the Petitioner's ability to sustain full-time work. The ALJ must evaluate a claimant's "ability to work on a sustained basis." 20 C.F.R. § 404.1512(a) (*cited in Reddick v. Chater*, 157 F.3d 715, 724 (9th Cir. 1998)). The sporadic ability to work is not inconsistent with disability. *Lester v. Chater*, 81 F.3d 821, 833 (9th Cir. 1995)). Statements Petitioner made to a care provider on June 20, 2018, indicate that even this limited work as a counselor was "almost too much for her secondary to pain." (AR 582.) Nor is there any evidence in the record confirming that, when performing this work, Petitioner sat at a desk, typed, and used a computer. (AR 25.)

Moreover, it appears from the record that the ALJ failed to consider that Petitioner discontinued working as a counselor sometime after her statement to her treatment provider on June 20, 2018. Her earnings records reflect that, in 2018, she earned $4,167.00, a significant drop from the year prior when she earned $23,300.64. (AR 274.) There are no wages reported for 2019 or 2020. (AR 274.) This evidence is consistent with

**MEMORANDUM DECISION AND ORDER - 13**

Petitioner's testimony that she could not sustain the demands of a part-time position working between 2 and 6 hours per week.

The Court finds that the first reason provided by the ALJ for discrediting Petitioner's symptom testimony does not rise to a clear and convincing reason supported by substantial evidence in the record as a whole.

2.    *Daily Activities*

The Court's examination of the record indicates that the ALJ erred in characterizing Petitioner's statements to reach the conclusion that her pain was not as severe as alleged. The ALJ described Petitioner as regularly engaging in physical activities, such as regular walking and swimming, shopping, spending time with her granddaughter, interacting with friends, and spending time at the river on weekends. (AR 23, 24.) But, the ALJ developed this narrative by not fully accounting for the context of these activities, or all or parts of the testimony and reports in the record concerning them.

Daily activities may be grounds for an adverse credibility finding "if a claimant is able to spend a substantial part of his day engaged in pursuits involving the performance of physical functions that are transferable to a work setting." *Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir. 1989). However, the ALJ must make "specific findings relating to [the daily] activities" and their transferability to conclude that a claimant's daily activities undermine her subjective symptom testimony. *Burch v. Barnhart*, 400 F.3d 676, 681 (9th Cir. 2005). Here, the Court finds there is not substantial evidence to support that Petitioner's activities were "transferable" to a work setting or that Petitioner spent a "substantial" part of her day engaged in such activities. *See Fair*, 885 F.2d at 603.

**MEMORANDUM DECISION AND ORDER - 14**

The ALJ discussed instances in the record where Petitioner reported engaging in physical activity inconsistent with her testimony that she was not capable of fulfilling the walking and sitting requirements of sedentary work. However, a review of the record reveals that, as she described them, Petitioner's activities do not contradict her testimony.

Petitioner reported on May 1, 2019, that, while her regular activity includes walking and "aerobic exercise," her energy level "is low," and she experienced mild shortness of breath if she walked more than one block. (AR 782.) Petitioner's treating provider noted her lower extremity edema was not controlled. (AR 782.) A counseling treatment note dated June 10, 2019, indicates Petitioner described herself as "doing well," she "accomplished multiple tasks this morning," she went for a walk, and she was spending time with her granddaughter. (AR 761.) On July 3, 2019, Petitioner reported "occasionally go[ing] for a short walk" with her sister, resting at home, and playing games on her tablet. (AR 749.) A record from October 22, 2019, the date Petitioner was admitted to St. Luke's Surgery Center for surgical intervention to correct atrial flutter, indicates Petitioner reported improvement in her symptoms of fatigue, heart palpitations, dyspnea, and low energy levels with "resting." (AR 892.) The provider's note indicates Petitioner "remains physically active but refers significant limitations in performing the activities of daily living related to her fatigue and dyspnea." (AR 892.)

There is no indication Petitioner walked daily, frequently, or for long distances; participated in physical activity equivalent to the demands of full time sedentary work over the course of an eight-hour day; or was otherwise active beyond what she described in her function reports or her testimony at the hearing. The ALJ made no specific findings

MEMORANDUM DECISION AND ORDER  - 15

regarding how these reports of "occasional" walks of up to a block before experiencing shortness of breath; resting; playing games on a tablet; and spending time with her granddaughter undermined her testimony that she could not walk more than fifteen feet without a rest break, or could otherwise tolerate the physical demands of full-time sedentary work.

Other treatment notes that the ALJ relied upon provide similarly unconvincing support to undermine Petitioner's testimony. For instance, a counseling note dated May 6, 2019, indicated that Petitioner reported she "slept well last night for the 1st time in a while." (AR 778.) The ALJ provides no reasoning as to how this one instance of sleeping well undermines Petitioner's testimony concerning her pain, or her ability to engage in the walking and sitting demands of full-time sedentary work. Additionally, the counseling treatment note dated June 6, 2018, that the ALJ referenced concerning 20 minutes spent at the river stated: "Plan: Kim will spend 20 minutes at the river on Saturday." (AR 590.) There is no evidence in the record that Petitioner was able to accomplish this goal.

It is not apparent from the record how Petitioner's statements regarding the minimal activities that she can perform inside and outside the home to take care of herself conflict with Petitioner's allegedly disabling symptomology. "[T]he mere fact that a plaintiff has carried on certain daily activities, such as grocery shopping, driving a car, or limited walking for exercise, does not in any way detract from her credibility as to her overall disability." *Vertigan v. Halter*, 260 F.3d 1044, 1049-50 (9th Cir. 2001). Further, "many home activities are not easily transferable to what may be the more grueling

environment of the workplace, where it might be impossible to periodically rest or take medication." *Fair*, 885 F.2d at 603; *Garrison v. Colvin*, 759 F.3d 995, 1016 (9th Cir. 2014) ("We have repeatedly warned that ALJs must be especially cautious in concluding that daily activities are inconsistent with testimony about pain, because impairments that would unquestionably preclude work and all the pressures of a workplace environment will often be consistent with doing more than merely resting in bed all day.").

The Court finds the record fails to demonstrate that Petitioner's daily  activities are inconsistent with her allegedly disabling symptomology. The Court therefore concludes the ALJ's second reason for discrediting Petitioner's symptom testimony does not rise to a clear and convincing reason supported by substantial evidence in the record as a whole.

### 3. *Objective Medical Evidence*

"While subjective pain testimony cannot be rejected on the sole ground that it is not fully corroborated by objective medical evidence, the medical evidence is still a relevant factor in determining the severity of the claimant's pain and its disabling effects." *Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001) (citing 20 C.F.R. § 404.1529(c)(2)). However, pain is a subjective phenomenon not fully measurable by objective portions of medical exams. *See* SSR 16-3p ("[S]ome individuals may experience symptoms differently and may be limited by symptoms to a greater or lesser extent than other individuals with the same medical impairments, the same objective medical evidence, and the same non-medical evidence."). The ALJ must consider whether the individual's statements about the intensity, persistence, and limiting effects

of her symptoms are consistent with the medical signs and laboratory findings of record. SSR 16-3p.

Although the ALJ found at step two that Petitioner's fibromyalgia was not severe, implicit in that finding is that Petitioner's fibromyalgia constitutes a medically determinable impairment. *Vargas v. Saul*, No. 1:19-CV-00299-CWD, 2020 WL 5521039, at *5, 6 (D. Idaho Sept. 14, 2020) (when the ALJ assesses an individual's RFC, he or she must consider all limitations and restrictions imposed by reason of an individual's medically determinable impairment or combination of impairments, even those not characterized as severe.). *See also Bowen v. Yuckert*, 482 U.S. 137, 150-151 (1987) (discussing that the Secretary must assess the severity of a medically determinable impairment); 20 C.F.R. § 404.1521 ("After we establish that you have a medically determinable impairment(s), then we determine whether your impairment(s) is severe.").[7] When assessing a claimant's RFC, the ALJ must consider impairments found to be medically determinable, even if not deemed severe. 20 C.F.R. § 404.1545(a)(2).

Having made such a finding at step two, the ALJ next rejected Petitioner's testimony concerning the severity of her pain based upon the lack of objective medical evidence to substantiate it and on her relatively conservative treatment. The ALJ relied upon the minimal objective findings noted on x-ray, and the conservative treatment measures employed by treating providers, to discredit Petitioner's subjective symptom

---

[7] The Court recognizes that the ALJ determined Petitioner's fibromyalgia diagnosis did not meet all the requirements set forth in SSR 12-p, because a physical examination documenting at least eleven positive tender points was not in the record. (AR 19, 46.) However, the ALJ unequivocally found Petitioner's fibromyalgia was a "non-severe" impairment. (AR 18.)

MEMORANDUM DECISION AND ORDER - 18

testimony concerning the severity of her pain. He noted Petitioner's diagnostic imaging results were generally normal,[8] that she moved her extremities appropriately, and her strength was noted as grossly intact. (AR 24.) Nonetheless, the ALJ also noted that a November 2018 record indicated Petitioner's joint pain and other pain complaints were "likely due to fibromyalgia and depression, with likely primary osteoarthritis of multiple joints contributing." (AR 24.) And, the ALJ credited Petitioner's consistent, "regular pain complaints," which the ALJ found "suggest[ed] a chronic disease process." (AR 25.)

Petitioner contends the ALJ's rejection of her pain testimony on the grounds that it was not corroborated by objective medical evidence is in error, citing *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 884 (9th Cir. 2006). Pet. Brief at 7. (Dkt. 17.)  In *Robbins*, the court held that an ALJ may not discredit a claimant's subjective symptom testimony on the grounds that no objective medical evidence supported the testimony regarding the severity of subjective symptoms from which she suffers, particularly pain. *Robbins*, 466 F.3d at 884. Rather, to discredit subjective pain testimony, the ALJ must rely on other factors. *Id.* The Court finds Petitioner's argument persuasive here.

The nature of fibromyalgia renders it undiagnosable based on objective medical tests. Rather, fibromyalgia "is diagnosed entirely on the basis of patients' reports of pain and other symptoms," and there are "no laboratory tests to confirm the diagnosis." *Benecke v. Barnhart*, 379 F.3d 587, 590 (9th Cir. 2004). Petitioner described her pain as affecting her shoulders, hands, wrists, knees, and back, and that her symptoms were

---

[8] The record contains objective medical evidence demonstrating a lumbar fusion and calcific tendinitis of Petitioner's left shoulder. (AR 23, 24.)

**MEMORANDUM DECISION AND ORDER  - 19**

constant and achy, with occasional sharp and burning pain in her joints. (AR 23.)
Examinations noted tenderness with palpation in other areas of the body, such as the
posterior shoulder and scapula, scalene muscles, and upper trapezius. (AR 24.) Treatment
for fibromyalgia may consist of steroid injections and medications, such as Lyrica, which
was prescribed by Petitioner's treating provider. (AR 52, 1115.) *See also Revels v.
Berryhill*, 874 F.3d 648, 667 (9th Cir. 2017) (describing treatment regimen for
fibromyalgia and explaining that an evaluation of the aggressiveness of a treatment
regimen must consider the condition being treated). This evidence constitutes objective
medical evidence of Petitioner's pain. SSR 12-2p (fibromyalgia is "a complex medical
condition characterized primarily by widespread pain in the joints, muscles, tendons, or
nearby soft tissues that has persisted for at least 3 months.").

  The ALJ's conclusion is internally inconsistent. He cannot, on the one hand, make
a finding that Petitioner's fibromyalgia was non-severe, which implicitly includes a
finding that it constitutes a medically determinable impairment, and then discount the
severity of her pain based on the lack of objective evidence. Consequently, the Court
finds the ALJ's reasoning that no objective medical evidence supported Petitioner's
testimony regarding the severity of her subjective pain symptoms is erroneous. *Robbins,*
466 F.3d at 884 (An ALJ may not discredit a claimant's subjective symptom testimony
on the grounds that no objective medical evidence supported the claimant's testimony
regarding the severity of subjective symptoms from which she suffers, particularly pain.).

  Next, Petitioner contends the ALJ erred when he cited Petitioner's use of a cane
without a prescription as a factor undermining Petitioner's subjective symptom

testimony. According to Petitioner, the ALJ rejected her testimony concerning her pain and ability to walk unassisted in part because she used a cane to walk that was not prescribed. Pet. Brief at 10; Resp. Brief at 7. It is not clear from the ALJ's written decision whether the ALJ intended this to be an independent reason for doubting Petitioner's subjective complaints, as the ALJ simply states: "[t]he claimant alleged that she uses a cane to help with ambulation. However, the record did not refer to a prescription for the use of a cane." (AR 23.) Elsewhere, the ALJ cited to records wherein treatment providers documented normal balance and normal gait. (AR 23.)

Thus, it appears the ALJ intended his statement regarding Petitioner's use of a cane as an explanatory reason why Petitioner's allegations were inconsistent with the objective medical evidence. Petitioner contends the ALJ's reliance on her use of a cane without a prescription to discredit her subjective symptom testimony was error, because Petitioner's treatment providers explicitly noted her use of the cane, and did not object to its use. Pet. Brief at 10. Respondent counters that the nonprescribed use of an assistive device undermines a claimant's subjective complaints, citing *Chaudhry v. Astrue*, 688 F.3d 661, 671 (9th Cir. 2012) (claimant's non-prescribed use of a wheelchair and unwarranted use of a cane also factored into the ALJ's determination that [claimant's] subjective expression of his limitations lacked credibility).

Respondent's reliance upon *Chaudhry* is misplaced. There, the United States Court of Appeals for the Ninth Circuit found that the unprescribed and unwarranted use of an assistive device could be a valid consideration in an ALJ's credibility analysis. However, in *Chaudhry*, the ALJ had found that the petitioner's continued use of a cane

**MEMORANDUM DECISION AND ORDER - 21**

undermined his credibility because the petitioner's physicians specifically advised him to stop using his non-prescribed cane as "long term use of the cane [would] further encourage pain and disabled behaviors." *Chaudhry*, 688 F.3d at 664. In affirming the ALJ's adverse credibility determination, the court held that petitioner's continued use of a cane against his physicians' recommendations demonstrated his failure to follow the advice of providers, which itself undermined Petitioner's testimony concerning his subjective symptoms. *Id*. at 672. The present case is unlike *Chaudry*.

Here, although Petitioner's cane was not initially prescribed, Petitioner's medical records confirm that her physicians repeatedly noted the use of a cane without objection, and with implicit endorsement. (AR 584 (gait and stance abnormal, uses cane to help with ambulation); 1160 (ambulates with a cane, "unstable on her feet"); 1137 ("would like a note to use a cane to help assist with ambulation. She has been using a relatives that passed away and does not think it is the appropriate height.")). Further, Dr. Michael Sant, who conducted a consultative examination of Petitioner on September 7, 2018, noted that Petitioner appeared to be able to walk functional distances with the use of a single point cane for balance. (AR 651.)

Thus, because it is not entirely clear that the ALJ intended his discussion of Petitioner's use of a cane without prescription to be an additional reason (beyond inconsistency with the objective medical evidence) to discount Petitioner's subjective symptom testimony, and there is at least some medical evidence supporting Petitioner's need for a cane, the Court does not find this a sufficiently clear or convincing reason supporting the ALJ's adverse finding regarding Petitioner's subjective symptom

testimony. *See, e.g., Saunders v. Astrue*, 433 F. App'x 531, 534 (9th Cir. 2011) (ALJ's observation that claimant wore a brace and used a cane when "no treating physician had prescribed these assistive devices" provided little, if any, support to discredit his testimony).

## 2.    Lay Witness Testimony

Petitioner contends the ALJ erred by dismissing lay witness statements without providing germane reasons for doing so. (Dkt. 17.) Respondent maintains that Petitioner failed to show prejudicial error, because the lay witness statements describe the same subjective complaints that the ALJ rejected when he considered Petitioner's subjective symptom testimony. (Dkt. 18.) The Court finds the ALJ erred for the reasons explained below.

### A.    Legal Standard

"Lay testimony as to a claimant's symptoms is competent evidence that an ALJ must take into account, unless he or she expressly determines to disregard such testimony and gives reasons germane to each witness for doing so." *Diedrich v. Berryhill*, 874 F.3d 634, 640 (9th Cir. 2017) (quoting *Lewis*, 236 F.3d at 511). For claims filed on or after March 27, 2017, 20 C.F.R. § 404.1520c governs how an ALJ must evaluate evidence from medical sources, which includes a clarification on how an ALJ evaluates nonmedical lay testimony. *See* 20 C.F.R. § 404.1520c(d). Under the plain language of the regulations, the ALJ must consider lay witness statements: "In evaluating the intensity and persistence" of symptoms, the ALJ "consider[s] all of the available evidence," including that from "medical sources and nonmedical sources about how [a claimant's]

symptoms affect [him]." 20 C.F.R. §§ 404.1529(c)(1); 416.929(c)(1); *see also* SSR 16-3p (requiring ALJs to consider other evidence such as other non-medical sources to evaluate symptoms). However, 20 C.F.R. §§ 404.1520c(d); 416.920c(d), specifies that the ALJ is not required to articulate how he or she considered evidence from nonmedical sources "using the requirements in subparagraphs (a) – (c)," applicable to evaluations of medical opinions.

Rather, "[i]f the ALJ wishes to discount the testimony of lay witnesses, he [or she] must give reasons that are germane to each witness." *Dodrill v. Shalala*, 12 F.3d 915, 919 (9th Cir. 1993). When rejecting third party statements which are similar in nature to Petitioner's statements, the ALJ may cite the same reasons used in rejecting the claimant's statement. *See Valentine v. Comm'r Soc. Sec. Admin.*, 574 F.3d 685, 694 (9th Cir. 2009) (approving rejection of a third-party family member's testimony, which was similar to the claimant's, for the same reasons given for rejection of the claimant's complaints).

### B.    Lay Witness Statements

The record contains several lay witness statements: two written statements from Petitioner's sister, Kelly Rolland; a statement from Lisa Herrera, a former co-worker; and an assessment prepared by the Oregon Department of Human Services. (AR 334-42; 376-84; 420; 1110-12.) In Rolland's first statement dated July 28, 2018, she indicated she observed Petitioner two or three times each week. She stated that Petitioner used a shower chair, was unable to stand in the shower, and could sit in a bathtub to take care of her personal hygiene. (AR 335.) Rolland indicated also that Petitioner required the use of

a stool to prepare meals, which consisted of sandwiches or soup; that Petitioner was able to do laundry, but required breaks and it would take her up to two hours; and, that she needed help with the laundry basket. (AR 336.) Rolland stated Petitioner used a cane due to back pain and was able to shop outside the home for groceries one time every month with assistance. (AR 337.) Rolland described Petitioner's hobbies as watching television and talking to friends on the telephone and the computer, but clarified that, while doing these activities, Petitioner constantly changed positions and could not stay in one spot for long. (AR 338.) Rolland estimated Petitioner could walk fifty feet before needing to rest for about thirty minutes due to pain. (AR 339.)

A second adult function report Rolland completed on February 17, 2019, is largely similar. However, at this time, Petitioner was living with Rolland and her husband, and Rolland indicated she and her husband helped Petitioner with cooking, grocery shopping, and household chores. (AR 376.) Otherwise, most of the time, Petitioner napped and rested a lot because of pain. (AR 376.) Rolland indicated that she assisted Petitioner with dressing, bathing, caring for her hair, and driving her to stores due to Petitioner's pain. (AR 377.) Rolland described Petitioner as able to do some chores, such as laundry, dishes, cleaning her room, and cleaning the bathroom, but that it would sometimes take all day. (AR 378.) Petitioner required the use of a hamper on wheels to do laundry, and the use of a stool to wash dishes or cook. (AR 378.) Petitioner's hobbies at the time consisted of watching TV and playing games. (AR 380.) Rolland estimated that Petitioner could walk about 25 feet before needing to rest for five to ten minutes because of pain. (AR 381.) She also estimated Petitioner could sit for five to seven minutes before being

interrupted by pain, and that pain limited Petitioner's ability to lift more than five pounds, squat, kneel, bend, use her hands, stand, reach, or walk. (AR 383.)

Lisa Herrera provided a statement dated May 7, 2020. (AR 420.) She was Petitioner's assistant while Petitioner was employed as a medical records clerk. Herrera stated that, due to Petitioner's limitations, "she was unable to walk from our office through the facility to the other departments to pick up the documents we required for our job without extreme pain." (AR 420.) Herrera assisted Petitioner by walking around the facility and retrieving the documents Petitioner needed to complete daily tasks. Herrera observed Petitioner utilizing a TENS unit and ice applied to her back, which Petitioner obtained from the physical therapy department near Petitioner's office, and that the dietary department had to assist Petitioner with monitoring her blood sugars while at work. Herrera observed Petitioner walked with use of a cane.

On April 15, 2020, the Department of Health and Human Services for the State of Oregon assessed Petitioner's abilities for the purpose of determining benefits for long term services and supports supplied by Medicaid. (AR 1112.) The case manager determined eligibility for the program based upon her observation that Petitioner needed help getting up from a chair, and upon Petitioner's statements that she required assistance with meal preparation, grocery shopping, laundry, and household chores. (AR 1111-12.) Petitioner was approved for a total of 26 hours of home health services each week. (AR 1112.)

C.    **Analysis**

The Court finds the ALJ erred with regard to consideration of lay witness

statements. Rolland's testimony was given mere passing mention, (AR 22), while the

ALJ failed to discuss, let alone mention, the statement by Herrera or the Oregon

Department of Health and Human Services. All of these statements corroborated

Petitioner's own testimony and are consistent with Petitioner's described limitations with

regard to walking, sitting, bending, reaching, and her ability to perform activities of daily

living. The testimony by each of the lay witnesses was uncontradicted, and they

concerned how Petitioner's impairments might impact her physical ability to perform

work related tasks.

Respondent suggests the Court dismiss the ALJ's error as harmless, because the

lay witness reports are consistent with Petitioner's own subjective complaints, which the

ALJ rejected. However, the ALJ, not the Court, is required to provide specific reasons for

rejecting lay testimony. *See Dodrill*, 12 F.3d at 919. "The Court is constrained to review

the reasons the ALJ asserts and cannot affirm the decision of an agency on a ground that

the agency did not invoke in making its decision." *Pinto v. Massanari*, 249 F.3d 840, 847

(9th Cir.2001) (citing *SEC v. Chenery Corp.*, 332 U.S. 194, 196 (1947)). The Court must

decline Respondent's suggestion because it "invites this Court to affirm the denial of

benefits on a ground not invoked by the Commissioner in denying the benefits

originally." *Id.* at 847–48. Further, where the ALJ's error lies in a failure to properly

discuss competent lay testimony favorable to the claimant, the Court "cannot consider the

error harmless unless it can confidently conclude that no reasonable ALJ, when fully

crediting the testimony, could have reached a different disability determination." *Stout v. Comm'r, Soc. Sec. Admin*., 454 F.3d 1050, 1056 (9th Cir. 2006).

In this case, the Court cannot so conclude. As discussed above, the Court rejects the ALJ's reasons for discrediting Petitioner's testimony concerning the severity and limiting effects of her pain. Further, if fully credited, the lay testimony supports a conclusion that Petitioner's pain and physical limitations render her in need of accommodations to sustain full-time employment at a sedentary exertion level. She required such accommodations in her prior employment as a medical records clerk, something the ALJ failed to acknowledge, yet the ALJ concluded Petitioner could return to her past work as a medical records clerk. Further, the lay testimony supports a finding that Petitioner would suffer excessive time off task, and would be unable to fulfill the walking, standing, or sitting requirements at the sedentary exertion level. Accordingly, a reasonable ALJ could find this evidence precludes Petitioner from returning to gainful employment. Consequently, the Court finds the ALJ's failure to provide reasons for rejecting the lay witness testimony is not harmless.

Respondent's other arguments are without merit. First, contrary to Respondent's argument, the regulations clearly require the ALJ to provide more than a passing mention to lay witness statements. *See Robert U. v. Kijakazi*, No. 3:20-CV-1817-SI, 2022 WL 326166, at *7 (D. Or. Feb. 3, 2022) (no provision of the new regulations unambiguously removes the ALJ's obligation to address lay witness testimony); SSR 16-3p (explaining that other sources may provide information from which inferences may be drawn about a

claimant's symptoms, and that "we will consider any statements in the record" by non-medical sources and "will consider any personal observations of the individual…..").

Next, Respondent invites the Court to reject Herrera's statement, because it described Petitioner's functioning before her alleged onset date, which Respondent contends is of limited relevance. However, Herrera described the accommodations required to allow Petitioner to function in her previous employment, which the ALJ concluded was sedentary as actually performed. (AR 26.)[9] When determining Petitioner retained the RFC to return to her previous employment as a medical records clerk, the ALJ did not discuss the accommodations Petitioner required, nor did the ALJ question the vocational expert about necessary accommodations. Moreover, the fact the ALJ considered other sedentary occupations at step five does not eliminate the error here, because Herrera's testimony directly concerns Petitioner's ability to sustain full-time competitive employment at the sedentary exertion level without interruption from pain and without accommodation.

And last, the Department of Health and Human Service's assessment is not merely a service plan completed by another governmental agency for its own programs and its own rules that the ALJ was free to disregard. 20 C.F.R. § 404.1504 provides that decisions by another governmental agency about whether a claimant is disabled or entitled to benefits "is not binding," and therefore the Commissioner is not required to provide any "analysis in our determination or decision about a decision made by any

---

[9] The job of medical records clerk is classified at the light exertional level. (AR 26.) However, the vocational expert found that, as actually performed, the job was at the sedentary exertional level. (AR 26.)

**MEMORANDUM DECISION AND ORDER  - 29**

other governmental agency…about whether you are disabled…or entitled to benefits."
*See also* . 20 C.F.R. § 416.904. But Respondent's argument is flawed, because the case worker documented, based upon observation, that Petitioner required assistance to get up from a chair. This observation directly concerns Petitioner's functional abilities and is not a decision about entitlement to benefits. Yet, the ALJ failed to comment at all regarding this independent third-party observation. *See* SSR 16-3p ("The adjudicator will consider any personal observations of the individual in terms of how consistent those observations are with the individual's statements about his or her symptoms as well as with all of the evidence in the file.").

Because the ALJ failed to provide any reasons for rejecting competent lay witness testimony, and the Court concludes the error was not harmless, substantial evidence does not support the ALJ's determination that Petitioner can perform her previous work as a medical records clerk or court clerk, or that she may make a successful adjustment to other work at the sedentary exertion level in the national economy. Accordingly, remand is warranted on this issue.

**3.    Medical Opinion Evidence**

Petitioner contends the ALJ failed to properly evaluate the opinion of Dr. Michael Sant, who conducted an orthopedic examination on September 7, 2018. Pet. Brief at 13. (Dkt. 17.) Respondent maintains the ALJ properly considered the medical opinion and explained the bases for his evaluation of the opinion evidence as required by the applicable regulations. Resp. Brief at 11. (Dkt. 18.)

A.      **Legal Standard**

For applications filed on or after March 27, 2017, the ALJ must consider and evaluate the persuasiveness of all medical opinions or prior administrative medical findings from medical sources according to the following factors: supportability; consistency; relationship with the claimant (including length of the treatment, frequency of examinations, purpose of the treatment, extent of the treatment, and the existence of an examinations); specialization; and other factors such as the medical source's familiarity with other evidence in the record or with disability program requirements. 20 C.F.R. §§ 404.1520c(c)(1)-(5); 416.920c(c)(1)-(5).[10] The ALJ's duty to articulate a rationale for each factor varies. 20 C.F.R. §§ 404.1520c(a)-(b); 416.920c(a)-(b).

Supportability and consistency are the most important factors and, therefore, the ALJ must explain how both factors were considered. 20 C.F.R. §§ 404.1520c(b)(2); 416.920c(b)(2). The supportability factor looks inward at the medical opinion's bases; "[t]he more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s)…, the more persuasive the medical opinions…will be." 20 C.F.R. §§ 404.1520c(c)(1); 16.920c(c)(1). The consistency factor, on the other hand, looks outward, comparing the opinion to the other evidence in the record; "[t]he more consistent a medical opinion(s)…is with the

---

[10] The Commissioner revised the regulations applicable to the evaluation of medical evidence for disability applications filed on or after March 27, 2017. *See* Revisions to Rules Regarding the Evaluation of Medical Evidence, 82 Fed. Reg. 5844-01 (Jan. 18, 2017). Because Petitioner's application was filed after March 27, 2017, the application is subject to the revised regulations. *See Nat'l Cable & Telecomms. Ass'n v. Brand X Internet Services*, 545 U.S. 967, 981-82 (2005); *see, e.g., Schisler v. Sullivan*, 3 F.3d 563, 567-58 (2d Cir. 1993).

evidence from other medical sources and nonmedical sources in the claim, the more

persuasive the medical opinion(s)…will be." 20 C.F.R. §§ 404.1520c(c)(2);

416.920c(c)(2).

Under the regulations, the ALJ is required to "articulate...how persuasive [they]

find all of the medical opinions" and "explain how [they] considered the supportability

and consistency factors." 20 C.F.R. §§ 404.1520c(b); 416.920c(b). "The 'more relevant

the objective medical evidence and supporting explanations presented' and the 'more

consistent' with evidence from other sources, the more persuasive a medical opinion or

prior finding." *Carmen Claudia S. v. Saul*, 2021 WL 2920614, at *8 (C.D. Cal. July 9,

2021) (quoting *Robert S. v. Saul*, 2021 WL 1214518, at *3 (D. Or. Mar. 3, 2021)). "In

sum, the Commissioner must explain his [or her] reasoning and specifically address how

he [or she] considered the supportability and consistency of the opinion, and his [or her]

reasoning must be free from legal error and supported by substantial evidence." *Id.*

(quoting *Titus L. S. v. Saul*, 2021 WL 275927, at *7 (C.D. Cal. Jan. 26, 2021)) (citations

omitted).

### B.    Dr. Michael Sant

Dr. Sant conducted an orthopedic examination of Petitioner on September 7, 2018.

(AR 646.) Dr. Sant assessed Petitioner's range of motion as "normal, though with

subjective discomfort." (AR 648-650.) He noted normal bulk and tone to her

musculature, albeit with "positive pain behavior." (AR 650.) Dr. Sant provide an opinion

that, "based on her subjective complaints and her previous back surgery, she may have

**MEMORANDUM DECISION AND ORDER  - 32**

difficulty with prolonged sitting or standing or heavy lifting or carrying…She would require frequent position changes as needed….” (AR 651.)[11]

The ALJ found Dr. Sant's opinion was not consistent with the objective findings noted upon his physical examination. (AR 24.) However, for the reasons discussed above concerning Petitioner's complaints of pain, the Court finds the ALJ's determination is in error. Dr. Sant documented in his physical examination notes that, while Petitioner exhibited full range of motion and normal strength, she exhibited pain behaviors and complained of pain with movement. This assessment is consistent with Petitioner's testimony and the lay witness statements concerning her pain. Dr. Sant relied upon not only his observations, but also Petitioner's self-reports of pain and her medical history. Because of the errors in the evaluation of Petitioner's subjective symptom testimony and lay witness statements, the Court finds the ALJ erred regarding his evaluation of the supportability and consistency of Dr. Sant's opinion.

## CONCLUSION

The Court concludes the ALJ erred in his evaluation of Petitioner's subjective symptom testimony, lay witness testimony, and Dr. Sant's opinion. As a result, the ALJ's RFC determination is not supported by substantial evidence. A remand is appropriate where there are outstanding issues that must be resolved before a determination of

---

[11] Dr. Sant provided other opinions concerning Petitioner's ability to handle objects and reach with her upper limbs. However, the parties agree that the only opinion relevant here is Dr. Sant's opinion regarding prolonged sitting and standing, and the need for frequent position changes as necessary. Resp. Brief at 11; Pet. Reply Brief at 5. The vocational expert testified at the hearing that if someone needed to adjust positions between sitting and standing every thirty minutes, that would preclude all past relevant work. (AR 70.)

**MEMORANDUM DECISION AND ORDER - 33**

disability can be made and it is not clear from the record that the ALJ would be required to find the claimant disabled If all the evidence were properly evaluated. *Bunnell v. Barnhart*, 336 F.3d 1112, 1115-16 (9th Cir. 2003). The Court finds remand is the appropriate remedy here to allow the ALJ to reconsider Petitioner's subjective symptom testimony, lay witness statements, and medical opinion evidence. The Court will therefore reverse and remand this matter for further proceedings consistent with this opinion.

## ORDER

**NOW THEREFORE IT IS HEREBY ORDERED THAT:**

1.      The Petition for Review (Dkt. 1) is GRANTED.

2.      This matter is REVERSED and REMANDED to the Commissioner for further proceedings consistent with this opinion.

3.      This Remand shall be considered a "sentence four remand," consistent with 42 U.S.C. § 405(g) and *Akopyan v. Barnhart*, 296 F.3d 852, 854 (9th Cir. 2002).

DATED: August 22, 2022

Honorable Candy W. Dale
United States Magistrate Judge